**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Kelle Raskin, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TransUnion; Trans Union LLC; and Salesforce, Inc.,<br><br>Defendants. | Case No. 26-cv-03227<br><br>JURY TRIAL DEMANDED |

Plaintiff Kelle Raskin, individually and on behalf of all others similarly situated, brings this class action against Defendants TransUnion and Trans Union LLC (together, "TransUnion"), and Salesforce, Inc. ("Salesforce") (collectively, "Defendants"). Except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge, the following allegations are made upon information and belief, including investigation conducted by counsel.

**PARTIES**

1. At all times relevant to the allegations in this Complaint, **Plaintiff Kelle Raskin** is and has been a citizen and resident of Land O Lakes, Florida.

2. Defendant **Trans Union LLC** is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

3. Defendant **TransUnion,** formerly TransUnion Holding Company, Inc., is a Delaware corporation with its principal place of business located in Chicago, Illinois.

4. Defendant **Salesforce, Inc.** is a Delaware corporation with its principal place of business located in San Francisco, California.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the proposed Class is a citizen of a state different from that of at least one Defendant; the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs; and the proposed class comprises more than 100 Class Members.[1]

6. The Court has personal jurisdiction over Defendants because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and the TransUnion Companies reside in this district.

7. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District, the TransUnion Companies reside in this District, and Defendants have harmed Class Members residing in this district.

8. This Complaint is filed to confer subject matter jurisdiction over the case and so that the case brought by Plaintiff may be related via intradistrict transfer to the pending *In re Trans Union, LLC, Customer Data Security Breach Litigation*, No. 25-cv-10320 (N.D. Ill.), for inclusion in the MDL.

## FACTUAL ALLEGATIONS

9. Plaintiff incorporates the allegations from the operative pleading in the MDL.

10. This case arises from a Data Breach of the Private Information of millions of consumers.

[1] Under the Class Action Fairness Act, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Thus, Trans Union LLC is deemed a citizen of Delaware (its state of organization) and Illinois (its principal place of business).

11. According to the TransUnion Companies, on or about July 28, 2025, a threat actor gained access to one of TransUnion's third-party applications by posing as a help desk technician. "The threat actor instructed two call center agents, one of whom is an employee of a vendor firm and not a TransUnion employee, to access a URL, which downloaded a malicious application, allowing the threat actor to access the third-party application environment."[2]

12. The threat actor intentionally targeted and accessed the TransUnion Companies' Salesforce CRM for the purpose of accessing and exfiltrating Plaintiff's and Class Members' Private Information. The threat actor was successful.

13. According to the TransUnion Companies, the Data Breach was discovered two days later on July 30, 2025.[3]

14. Although not discussed in the notice letters sent to victims, the TransUnion Companies have publicly disclosed the Data Breach impacted 4.4 million victims.[4] The breached information includes names, dates of birth, and Social Security numbers.[5]

15. After the Data Breach, the threat actor group Shiny Hunters publicly disclosed their infiltration of the TransUnion Companies' Salesforce environment via their dark web site.

---

[2] Ltr. to Iowa Attorney General Bird from TransUnion (Sept. 2, 2025), https://www.iowaattorneygeneral.gov/media/cms/922025_TranUnion_LLC_05DE2075E6640.pdf.

[3] *Id.*

[4] Zack Whittaker, *TransUnion says hackers stole 4.4 million customers' personal information*, TechCrunch (Aug. 28, 2025), https://techcrunch.com/2025/08/28/transunion-says-hackers-stole-4-4-million-customers-personal-information/.

[5] *Id.*




16. According to the post, Shiny Hunters obtained 13 million plus records with Private Information, including full names, email addresses, phone numbers, residence addresses, dates of birth, Social Security numbers, live chat transcripts (communications between customer and support agent), and employee information. The post on Shiny Hunters' leak site also included clear text samples of the stolen data.

17. While the TransUnion Companies did not disclose the identity of the compromised, third party application, news sources have indicated that according to the threat actor, they gained access to the TransUnion Companies' Salesforce CRM account as a result of a successful social engineering attack that leveraged Salesforce's Data Loader application. Had Salesforce implemented controls to ensure that only vetted, whitelisted applications could be authorized to

execute functions, the threat actors could not have successfully gained access to the TransUnion Companies' network on which Private Information was stored.

18. The stolen information, including Social Security numbers, was stored and exfiltrated in plain text.[6]

19. This Data Breach is one of many cyberattacks perpetrated by Shiny Hunters, both before and after the Data Breach, which has used voice phishing attacks to target Salesforce customers to steal data from companies' Salesforce CRMs.[7]

20. In these attacks, Shiny Hunters impersonates IT support personnel, and requests that the targeted individual accept a connection to a version of the Salesforce Data Loader application.[8]

21. Salesforce users can access their Salesforce platform through a variety of "Connected Apps" with one such connected app being the Salesforce "Data Loader."[9]

22. The Data Loader supports OAuth authentication, in which a Salesforce user can access their CRM account without having to enter a username or password, therefore bypassing any multi-factor authentication ("MFA").

23. As a direct result of the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer economic and other concrete harms, including but not limited to:

---

[6] *TransUnion notifying more than 4.4 million consumers of data breach (1)*, DataBreaches.net (Aug. 28, 2025), https://databreaches.net/2025/08/28/transunion-notifying-more-than-4-4-u-s-million-consumers-of-data-breach/.

[7] Bill Toulas, *Google: Hackers target Salesforce accounts in data extortion attacks*, Bleeping Computer (June 4, 2025), https://www.bleepingcomputer.com/news/security/google-hackers-target-salesforce-accounts-in-data-extortion-attacks/.

[8] *Id.*

[9] Data Loader, Salesforce, https://developer.salesforce.com/docs/atlas.en-us.dataLoader.meta/dataLoader/data_loader_intro.htm?_ga=2.198479343.1144892582.1772484047-820452526.1771362425 (last visited Mar. 29, 2026).

a. Unauthorized disclosure of their confidential information;

b. Loss of the control of their Private Information;

c. Loss of the benefit of their bargain in choosing organizations promising data protection;

d. Identity theft, fraud, and misuse of financial information;

e. Out-of-pocket expenses for credit monitoring, mitigation efforts, and fraud prevention tools;

f. Unauthorized charges and restricted access to financial accounts;

g. Emotional distress, anxiety, and loss of privacy;

h. Time and productivity lost dealing with the consequences of the breach;

i. Damage to credit scores, including from fraudulent inquiries; and

j. Continued and imminent risk of future fraud and identity theft due to their data being in the hands of unauthorized third parties.

24. Individuals suffer harm each time their personal data is compromised and circulated on underground markets—even if they have been affected by prior breaches. The dark web contains vast, fragmented repositories of stolen information that can be aggregated by different criminals for varied forms of fraud. Each subsequent breach increases the likelihood that a victim's sensitive data will be accessed by more actors and exploited in new and damaging ways.

25. Even in instances where an individual is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again as there is typically significant time and effort associated with seeking reimbursement. There may also be a significant time lag between when personal information is stolen and when it is misused for fraudulent purposes.

26. Plaintiff and Class Members place significant value on data security and consider a company's ability to protect personal information a key factor in their purchasing decisions.

Many consumers are willing to pay more for services from organizations that demonstrate strong cybersecurity practices. Conversely, consumers are far less likely to share personal data with companies that have suffered a data breach—reflecting the reputational damage and business consequences that flow from failing to safeguard sensitive information.

27. Because of the premium consumers place on data privacy, companies with robust security practices are viewed more favorably and can command higher prices than those that do not. Had the TransUnion Companies' customers including Plaintiff known the truth about its lack of cybersecurity—or that it entrusted their sensitive data to an entity with inadequate security practices—they would not have used or enrolled in the TransUnion Companies' plans or services; paid less; or otherwise sought alternative arrangements for services. As a result, Plaintiff and Class Members were deprived of the benefit of their bargain, having paid for secure and responsible handling of their Private Information but receiving substantially less in return.

28. By collecting and storing Plaintiff's and Class Members' sensitive information, Defendants undertook a duty to safeguard it and avoid increasing the risk of identity theft or fraud. Because Defendants failed to uphold that duty, Plaintiff seeks the present value of identity protection services and other compensatory measures to address the current and future harm stemming from the Data Breach.

29. Additionally, Plaintiff and Class Members are entitled to recover the reasonable use value of their Private Information that was accessed and exfiltrated without authorization. This form of compensation mirrors damages awarded in intellectual property cases for unauthorized use of intangible assets. As with a patent or trade secret, Private Information is non-rivalrous: their unauthorized use by a third party does not eliminate the owner's ability to use them but still justifies compensation based on market value.

30. Defendants' delayed and incomplete notice of the Data Breach caused additional harm to Plaintiff and Class Members. The communication failed to disclose critical information, including the scope of the breach, the exact nature of the information stolen, the third-party application that was breached, the number of individuals affected, and the identity of the threat actors. Despite the fact that the stolen data was obtained by a well-known ransomware gang and TransUnion was advertised on the ransomware gang's website. This lack of transparency has deprived victims of the ability to take timely, informed, and proactive measures to mitigate harm caused by the Data Breach.

31. Upon information and belief, Defendants continue to retain the Private Information of Plaintiff and all Class Members. As long as Defendants maintain possession of this information, Plaintiff and Class Members have a strong and ongoing interest in ensuring that adequate safeguards are in place to prevent further unauthorized access or disclosure.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.

33. The Class that Plaintiff seeks to represent is defined as follows:

> **Nationwide Class**: All individuals residing in the United States whose Private Information was compromised in the Data Breach, including all those individuals who received notice of the Data Breach.
>
> Excluded from the Class and Subclasses are Defendants, their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any judicial officer to whom this case is assigned as well as their judicial staff and immediate family members.

34. The proposed Class meets all of the elements of Rule 23(a), (b), and (c), as described in the operative pleading in the MDL.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION – NEGLIGENCE

***On behalf of Plaintiff and the Nationwide Class, or alternatively, the State Subclasses, against All Defendants***

35. Plaintiff restates the allegations in Paragraphs 1 – 34 above as if fully set forth herein.

36. Defendants knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

37. Defendants' duty also included a responsibility to implement processes by which they could detect and analyze a breach of their or their third-party vendors' security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

38. Defendants knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendants were on notice because, on information and belief, they knew or should have known that they would be an attractive target for cyberattacks.

39. Defendants owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

b. To design, maintain, oversee, and test Salesforce's security systems to ensure that the Private Information in Salesforce's possession was adequately secured and protected;

c. To protect the Private Information in their possession by using reasonable and adequate security procedures and systems compliant with industry standards;

d. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

e. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to the FTCA;

f. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

g. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

40. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

41. Defendants' duty also arose because Defendants were bound by industry standards to protect the Private Information entrusted to them.

42. Plaintiff and Class Members were foreseeable victims of any inadequate data security practices on the part of Defendants, and Defendants owed them a duty of care not to subject them to an unreasonable risk of harm.

43. Defendants also had independent duties under state laws that required them to reasonably safeguard Plaintiff and Class Members' Private Information and promptly notify them of the Data Breach.

44. Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within their possession.

45. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

46. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

47. The specific negligent acts and omissions committed by the TransUnion Companies include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security systems and data security practices to safeguard Plaintiff's and Class Members' Private Information from being accessed and exfiltrated in the Data Breach, including training its staff;

b. Failing to adequately monitor the security of their networks and systems, including failing to implement processes to quickly detect a data breach, resulting in Defendants' failure to detect the Data Breach for nearly three months;

c. Failing to periodically ensure that its systems maintained reasonable data security safeguards;

d. Failing to restrict privileges to a need only basis;

e. Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

f. Failing to comply with the FTCA;

g. Failing to adopt, implement, and maintain adequate practices and protocols to promptly determine that Plaintiff's and Class Members' Private Information had been compromised in the Data Breach;

h. Failing to adopt, implement, and maintain adequate practices and protocols to timely notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

i. Sharing its customers' Private Information with a company that it should have known did not have adequate systems, practices, and protocols in place to protect it from unauthorized disclosure; and

j. Failing to exercise adequate oversight of Salesforce and a "vendor firm" by ensuring they adopted reasonable data security measures, practices, and protocols to protect Plaintiff's and Class Members' Private Information from being accessed and exfiltrated in the Data Breach;

48. The specific negligent acts and omissions committed by Salesforce include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security systems and data security practices to safeguard Plaintiff's and Class Members' Private Information from being accessed and exfiltrated in the Data Breach, including training its staff;

b. Failing to adequately monitor the security of their networks and systems, including failing to implement processes to quickly detect a data breach, resulting in Defendants' failure to detect the Data Breach for nearly three months;

c. Failing to periodically ensure that its systems maintained reasonable data security safeguards;

d. Failing to restrict privileges to a need only basis;

e. Failing to adequately warn customers about known issues and vulnerabilities;

f. Failing to adequately fix known exploitable issues;

g. Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

h. Failing to comply with the FTCA;

i. Failing to adopt, implement, and maintain adequate practices and protocols to promptly determine that Plaintiff's and Class Members' Private Information had been compromised in the Data Breach; and

j. Failing to adopt, implement, and maintain adequate practices and protocols to timely notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

49. By failing to provide prompt and adequate individual notice of the Data Breach to Plaintiff and Class Members, Defendants acted with reckless disregard for the rights of Plaintiff and Class Members, depriving Plaintiff and Class Members of the ability to take measures to

protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

50. The TransUnion Companies had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Trans Union LLC with their Private Information was predicated on the understanding that the TransUnion Companies would take adequate security precautions, including with respect to their third-party vendors like Salesforce and the other unnamed "vendor firm" mentioned in the TransUnion Companies' Data Breach notice.

51. The injuries suffered by Plaintiff and Class Members were entirely foreseeable to both the TransUnion Companies and Salesforce, who understood the risks Class Members faced if their Private Information were to be exposed. The TransUnion Companies knew about these risks because of their status as a consumer reporting agency and owner of a consumer reporting agency, and Salesforce knew about these risks because its customers regularly store Private Information on its databases and servers. As such, all Defendants could foresee the risk of harm that Plaintiff and Class Members would suffer as a result of negligence related to the safe and secure storage of Private Information.

52. Defendants' breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised and exfiltrated, as alleged herein.

53. As a direct and proximate result of Defendants' inadequate security and the resulting Data Breach, Plaintiff suffered and will continue to suffer significant injuries, including, but not limited to: (1) loss of privacy; (2) misappropriation of their identity, name, and likeness; (3) fraud and identity theft from the misuse of their stolen Private Information; (4) loss in the value

of their Private Information due to the loss of security, confidentiality, and privacy in that the Plaintiff and Class Members lost the ability to control how and where the data is shared; (5) lost value of their Private Information; (6) emotional and mental distress and anguish resulting from the access, theft and posting of their Private Information; (7) lost time, effort and expense responding to and preventing the threats and harm posed by the Data Breach; and (8) a continued substantial and imminent risk of the misuse of their Private Information.

54. Plaintiff and the Class remain at heightened risk of future injury because their Private Information resides with Defendants and, further, because Defendants continue to gather new information on Plaintiff and the Class. Without the use of adequate data security, Plaintiff and the Class remain at a heightened and substantial risk that their Private Information will be subject to another data breach.

55. Plaintiff and the Class seek all monetary and non-monetary relief allowed by law, including any: economic damages; damages for emotional and mental anguish; nominal damages; enhanced or treble damages available under the law; court costs; reasonable and necessary attorneys' fees.

56. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, among other things, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of those similarly situated, respectfully request the following relief:

1. That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel in the MDL as Class Counsel;

2. That the Court grant permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

3. That the Court award Plaintiff and Class Members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

4. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

5. That Plaintiff be granted the declaratory relief sought herein;

6. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

7. That the Court award pre- and post-judgment interest at the maximum legal rate; and

8. That the Court grant all such other relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

Dated: March 23, 2026

/s/ *Amy Keller*
Amy Keller
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois 60602
(312) 214-7900
akeller@dicellolevitt.com

Gary M. Klinger
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866-252-0878
gklinger@milberg.com

Norman E. Seigel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Suite 200
Kansas City, MO 64112
816-714-7112
siegel@stuevesiegel.com

***Co-Lead Counsel in the Pending MDL***

Ben Barnow
Anthony L. Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Telephone: 312-621-2000
Facsimile: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

***Attorneys for Plaintiff Kelle Raskin***